## 60427. COOPERS & LYBRAND v. COCKLEREECE.

BIRDSONG, Judge.

Jurisdiction — Long Arm Statute. From affidavits, arguments and briefs presented to the trial court upon a motion to dismiss for lack of personal jurisdiction, we are able to cull the following pertinent factual circumstances from the proceedings in the trial court. Apparently in 1974 or 1975 and in subsequent years, Coopers & Lybrand, a Bahamian partnership of certified public accountants, prepared an audit and analysis of a company doing business under the name of Tamarind, also a Bahamian business. C & L Bahamas,

also apparently was affiliated with two other accounting firms of the same general name, Coopers & Lybrand International, and Coopers & Lybrand U. S. Sometime prior to 1977 Coopers & Lybrand (which C & L is not specified in the record) published two or more pamphlets, one entitled "Exit the Green Shade" and another entitled "Coopers Goes International." These publications in effect asserted that Coopers & Lybrand was an international business with offices in over 300 cities in the world, including Atlanta. Although the appellee Cocklereece makes reference to these two pamphlets and portions of the contents thereof, our search of the record fails to disclose either of the documents or that the trial court actually had access to the pamphlets (apparently through a failure of discovery).

In 1976 or 1977, two of the named defendants, McGlon and Feeney expressed an interest in purchasing 54% of the stock of Tamarind. C & L Bahamas furnished McGlon and Feeney copies of the audit statements of Tamarind prepared by C & L Bahamas. It is undisputed that at the time C & L Bahamas furnished these audit statements to McGlon and Feeney, C & L Bahamas had never heard of the appellee Cocklereece.

In April 1977, McGlon and Feeney approached one Phillips (in Atlanta), a business representative of the appellee Cocklereece. Phillips had a power of attorney issued to him by Cocklereece authorizing Phillips to act for Cocklereece in reputable financial investments and endeavors. In substance McGlon informed Phillips that he (McGlon) represented a "Funding Consortium." The purpose of the funding consortium was to stand behind borrowers who wished to borrow large sums of money for business purposes. The consortium consisted of "wealthy" individuals and "financially solvent" businesses. These entities would pledge their assets as surety for any loan. The consideration for the pledge was a 9% fee based upon the amount of the loan. Phillips informed his principal Cocklereece of the opportunity. Cocklereece met with Phillips, McGlon and Feeney and was presented various audit statements of the participating members and businesses constituting the funding consortium. One of the principal funding companies was alleged to be Tamarind and the audit statement prepared by C & L Bahamas was presented to Cocklereece. Additionally, Cocklereece was made aware of the two pamphlets, "Exit the Green Door" and "Coopers Goes International." As a result of the continuing negotiations, Cocklereece decided to purchase a printing company in Atlanta for a sum in excess of $2,000,000. Cocklereece successfully negotiated the sale with the local seller, subject to financing. Cocklereece together with several members of the "funding consortium" went to Panama where a local bank agreed to advance Cocklereece the $2,000,000

subject to the pledge of assets from the consortium. Cockereece paid to the consortium a sum of $30,000 as a portion of the 9% fee. Subsequently, no assets were deposited with the Panamanian bank and no loan was ever made to Cocklereece. After unsuccessful demands made upon the consortium for performance, Cocklereece brought the present suit against all the members of the consortium. Included as parties defendants were C & L Bahamas, C & L International, and C & L U. S. as well as other corporations and individuals. Cocklereece argues that the two pamphlets, above referenced, led him to believe that the three firms of accountants were in fact one integrated partnership. Service ultimately was effected upon C & L International and C & L U. S., both resident in the United States. Service also was made upon C & L Bahamas in Freeport, Grand Bahamas. In all, some 14 defendants were served. C & L Bahamas made a special appearance to protest service and their amenability to Georgia's Long Arm Statute. It is the contention of C & L Bahamas that there is no showing except by conclusory opinions that it is a part of an international partnership; that they have neither an office in Georgia nor an agent, nor have they ever transacted business in Georgia nor authorized anyone to represent them in any business transactions in this state. C & L Bahamas expressly deny that they are a partner with the International group of accountants. On the other hand, Cocklereece argues that the evidence as a whole shows that C & L Bahamas is a part of an overall conspiracy (aiding and abetting the linchpin conspirator Robert Vesco) to defraud U. S. investors and that the act of one of the conspirators in Georgia is the act of all; that McGlon and Feeney (and other conspirators) did in fact transact business in Georgia by showing Cocklereece a copy of the Tamarind audit in Atlanta and by showing the same audit opinion to a bank in Thomaston; and lastly that C & L Bahamas is estopped to dispute that it is not a partner with the other branches of C & L International. The trial court concluded on the hearing, without delineating the foundation therefor, that under applicable rules of partnership law, the law of conspiracy and the Georgia Long Arm Statute, C & L Bahamas was subject to the jurisdiction of the court. *Held:*

1. We first address the contention by Cocklereece that the appellant C & L Bahamas is subject to the long arm jurisdiction as a non-resident because C & L Bahamas has transacted business in this state. This contention arises out of the conduct of C & L Bahamas in allegedly preparing an audit opinion of Tamarind which contained false or misleading information. It is alleged that C & L Bahamas delivered this misleading audit to McGlon for distribution or use by McGlon and Feeney in the United States for the purpose of raising

money from U. S. investors, thus placing the report in the streams of commerce generally in the United States, including the potential use in the State of Georgia. It is alleged by Cocklereece that there was a closer relationship between C & L Bahamas and McGlon than that of auditor and client and that C & L knew that McGlon would use the report for purposes other than making a decision whether to buy 54% of the stock of Tamarind. It is asserted by Cocklereece that because McGlon showed the audit report to Phillips and Cocklereece in Atlanta and the bank in Thomaston, this constituted the transacting of business in the forum state, Georgia, and that McGlon was acting with knowledge of C & L. To the contrary, C & L denies any agency relationship or that a conspiracy existed to defraud U. S. investors. It denied even minimum contacts with the State of Georgia.

The courts of this state have previously discussed the requirements of "minimum contact" so as to confer personal jurisdiction over a non-resident. There are three broadly stated rules by which to judge the power of a forum state to exercise jurisdiction over a non-resident. These rules may be stated to be: (1) The non-resident must purposefully avail himself of the privilege of doing some act or consummating some transaction with or in the forum; (2) The plaintiff must have a legal cause of action against the non-resident, which arises out of, or results from, the activity or activities of the defendant non-resident within the forum, and (3) If the requirements of rules (1) and (2) are met, there must also exist a "minimum contact" between the non-resident and the forum. Lastly, the assumption of jurisdiction by the forum must be consonant with due process notions of "fair play" and "substantial justice." *Shellenberger v. Tanner,* 138 Ga. App. 399, 404-405 (227 SE2d 266).

The requirement of "fair play" and "due process" finds its genesis in the holding that "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U. S. 310, 316 (66 SC 154, 90 LE 95). This broad rule of "due process" is somewhat modified by a susequent holding that "[t]he application of that rule will vary with the quality and nature of the defendant's activity but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." Hanson v. Denckla, 357 U. S. 235, 253 (78 SC 1228, 2 LE2d 1283).

The recurring theme that manifests itself in these cases is that the defendant must "purposefully" avail himself of the privilege of

doing business in the forum state. Cocklereece seeks to fulfill this requirement by arguing that C & L Bahamas inserted the Tamarind audit into the stream of commerce deliberately intending that it be used in the United States to dupe U. S. investors. The argument continues that because it was known that the audit would be used in the United States generally, C & L was aware and intended that the audit be used in Georgia, one of the several states. However, C & L affirmatively denied that it had any contacts with the State of Georgia. There is no evidence that C & L "purposefully" availed itself of the privilege of doing business in Georgia; there is no evidence that C & L Bahamas carries on any business in Georgia; there is no evidence that C & L Bahamas closes sales or performs audits in Georgia; there is no indication that they avail themselves of any of the privileges or benefits of Georgia law; there is no evidence that C & L Bahamas solicits business here either through salespersons or through advertisement reasonably calculated to reach the state. C & L Bahamas has offered evidence that the Tamarind audit was regularly prepared (as for a client) for the several years preceding 1977. The copies of these audits were delivered to McGlon and Feeney when McGlon and Feeney indicated an interest in purchasing 54% of Tamarind's stock at a time before McGlon or C & L Bahamas had ever heard of Phillips or Cocklereece. C & L Bahamas concedes it might have known that McGlon was going to use the audit to raise money in New York and Louisiana but denied that it knew McGlon would use the audit elsewhere. In short, the evidence shows that even though C & L Bahamas may have intended or acquiesced in the introduction of the audit into the states of Louisiana and New York (or even possibly Florida, the state where McGlon lived and transacted business), we can find no evidence that C & L "purposefully" delivered its products (audit) into the stream of commerce directed to the State of Georgia or its citizens with the expectation that it would be purchased or used by consumers or citizens of the State of Georgia. See World-Wide Volkswagen Corp. v. Woodson, —— U. S. —— (100 SC 559, 62 LE2d 490).

2. Cocklereece alternatively seeks to furnish the "purposeful activity" by C & L Bahamas vicariously by the argument concerning the two pamphlets "Exit the Green Shade" and "Coopers Goes International." It is his argument that these documents show an active partnership between C & L International, C & L United States, and C & L Bahamas. As a partner, it is argued that each is individually responsible for the acts of the partnership and if one partner is subject to jurisdiction (C & L International and C & L United States are still undismissed parties defendant), then all are subject.

The fallacy of this argument becomes apparent when one examines the record carefully. C & L Bahamas has denied any connection with the other accounting firms other than a loose affiliation, and affirmatively denied a partnership. At best Cocklereece has made allegations in his pleadings and arguments in his briefs, of partnership and referred to what he read in the two booklets. He also makes extensive reference to depositions which are not included in the record. The two booklets are not a part of the record and the specific contents of the booklets are not before this court nor, apparently, was that information before the lower court. "We recently reaffirmed the rule that '[t]he bare assertion or denial of the existence of [a partnership] relationship is a statement of fact when made by one of the purported parties to the relationship; but when made by an outsider, bare assertions or denials are merely conclusions of law . . . The affidavit . . . denying the existence of [partnership] must be received as evidence of a fact, which cannot be overcome by conclusionary affidavits . . .' " *Aetna Cas. &c. Co. v. Malcom,* 149 Ga. App. 754, 755 (256 SE2d 117). Thus, the only evidence we have of the representation of a partnership in the referenced pamphlets is found in the briefs and affidavit of the appellee, Cocklereece. As to affidavits, CPA § 56 (e) (Code Ann. § 81A-156 (e)) specifically provides that they "shall 'set forth such facts as would be admissible in the evidence.' The same rule applies . . . on motion for summary judgment under the principle that admissibility of evidence on motion for summary judgment is governed by the rules relating to form and admissibility of evidence generally, so that evidence inadmissible on a hearing of the case would be inadmissible on motion for summary judgment." *Matthews v. Wilson,* 119 Ga. App. 708, 711 (168 SE2d 864). There can be little argument that second-hand reference to the contents of the two documents must constitute inadmissible hearsay. As to argument in briefs, this court will not consider factual representations in the appellee's brief which do not appear on the record. *Coweta Bonding Co. v. Carter,* 230 Ga. 585, 586 (1) (198 SE2d 281); *Konscol v. Konscol,* 151 Ga. App. 696 (1) (261 SE2d 438).

3. In a second alternative stance, Cocklereece argues that under the well established doctrine of conspiracy, once a conspiracy is shown the act of one conspirator is the act of all. Thus, Cocklereece argues that the allegations of his complaint are sufficient to raise the specter of a conspiracy and that C & L Bahamas is shown to be a part thereof. On that theory, if C & L Bahamas is shown to have acted in Georgia through one or more of its co-conspirators as a part of the conspiracy, then the allegations are sufficient to show the minimum contact necessary to support jurisdiction under the Long Arm

Statute.

Pretermitting whether the allegations are sufficient to show a conspiracy, we believe that even if the evidence and pleadings are sufficient so to show, the bare existence of a conspiracy is not enough to support long arm jurisdiction without a further showing of a "contact" with the forum jurisdiction. *Shellenberger,* supra, p. 409. "The exercise of jurisdiction over a nonresident is an exercise of power over him *by the forum,* and we take the language of Hanson [Hanson v. Denckla, supra] to mean that a nonresident must have some 'contact' with the forum itself and not just a connection with a resident plaintiff . . . [W]hen the unilateral actions of a forum plaintiff merely involve or somehow relate to a nonresident who has in no way conducted some activity with or in the state, there may be a 'connection' between the nonresident and the plaintiff but there is no 'contact' between the nonresident and the forum such that jurisdiction will lie." *Shellenberger v. Tanner,* supra, p. 408.

To hold that a non-resident who personally has conducted no activity in or with Georgia is subject to our jurisdiction based solely upon the theory of a conspiracy would eliminate the requirement for a "minimum contact" between that defendant and this forum. See Bankers Life &c. Co. v. Holland, 346 U. S. 379, 384 (74 SC 145, 98 LE 106); Williams v. Canon Inc., 432 FSupp. 376, 382 (D. C. Calif. 1977). Without the "minimum contact" there would be no due process limitation on this state's extraterritorial power over non-residents. We hold therefore that the mere allegation that a non-resident is a co-conspirator and through the conspiracy is chargeable with the acts of another conspirator within this state or that the act of the non-resident without the state, without more, ultimately results in an injury to a citizen of this state, does not establish a "contact" with this forum in the absence of implicit or explicit evidence of purposefully sought activity with or in Georgia by the non-resident, *Shellenberger,* supra, p. 410. We repeat our conclusion, at the risk of redundancy, that knowledge of the use of the Tamarind audit in other states of the United States is not sufficient to show a "minimum contact" with Georgia. The evidence must show an intent to use the audit in Georgia. "[M]anufacture and shipment of merchandise by [a manufacturer] for delivery to [a retailer] in Georgia placed the merchandise in the stream of commerce for resale at retail to Georgia citizens; and placing the merchandise in that stream pursuant to [indemnity] . . . amounted to 'transacting any business' in Georgia by [the manufacturer] under subsection (a) of our Long Arm Statute." *J. C. Penney Co. v. Malouf Co.,* 230 Ga. 140, 143 (196 SE2d 145). However, it does not follow that because the Tamarind audit was placed into the stream of commerce in the United States, it was

reasonably foreseeable that the audit might end up in Georgia. Foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state. Rather, it is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. World-Wide Volkswagen Corp. v. Woodson, supra. Appellee Cocklereece has not made a sufficient showing of minimum contact between Coopers and Lybrand, Grand Bahamas to warrant the exercise of jurisdiction of a Georgia court over that non-resident defendant.

4. Both sides argue extensive evidence in their briefs which apparently appeared in depositions. We cannot determine whether those briefs were presented to the trial court. As we stated earlier in this opinion, we will not consider factual representations in the briefs of either party which do not appear of record. *Coweta Bonding Co. v. Carter,* supra; *Konscol v. Konscol,* supra. From all that has been concluded in our discussions of the issues presented by this case, it follows that the trial court erred in failing to dismiss Coopers & Lybrand, Grand Bahamas as a party defendant for failure of personal jurisdiction.

*Judgment reversed. Deen, P. J., and Sognier, J., concur.*

DECIDED JANUARY 7, 1981 —
REHEARING DENIED JANUARY 29, 1981 — 

*Earle B. May, Jr., Robert H. Walling,* for appellant.
*Martin D. Chitwood, William C. Humphreys, Joseph J. Schafrik,* for appellee.