## A96A0211. RUDO et al. v. STUBBS.
(472 SE2d 515)

POPE, Presiding Judge.

We accepted this interlocutory appeal to determine whether the trial court erred in denying the motions to dismiss of nonresident defendants/appellants J. M. Rudo and Michael O'Higgins d/b/a Gobrecht Numismatics. Concluding that the in-state acts of their resident co-conspirator were properly imputed to appellants for purposes of satisfying the Long Arm Statute under the circumstances of this case, we affirm. See OCGA § 9-10-91.

Although the trial court held a hearing on the motion to dismiss, that hearing was not transcribed. Accordingly, we treat the motion as if it were decided on the basis of written submissions alone and resolve disputes of fact in favor of plaintiff. See *McPherson v. McPherson,* 238 Ga. 271 (232 SE2d 552) (1977); *Scovill Fasteners v. Sure-Snap Corp.,* 207 Ga. App. 539 (428 SE2d 435) (1993).

Defendant Don Wilson[1] contacted plaintiff Thomas Stubbs and suggested that he purchase a set of silver coins from Gobrecht Numismatics. Both Wilson and Stubbs are Georgia residents and this contact occurred in Georgia, but Gobrecht Numismatics is a Maryland sole proprietorship owned by defendant O'Higgins and managed by defendant Rudo. (For convenience we will collectively refer to defendants O'Higgins and Rudo as "Gobrecht.") Although the coins were priced at only $8,519, Wilson told plaintiff they cost $15,000; and at Wilson's request, Gobrecht told plaintiff over the phone that the price was $15,000 and sent him an invoice for that amount. After plaintiff paid Gobrecht the full $15,000, Gobrecht credited some of the extra money to Wilson for the purchase of other coins and eventually sent Wilson a check for the rest. Two months later the same routine was repeated: plaintiff paid Gobrecht $15,000 for a set of coins priced at $8,529, and Gobrecht sent Wilson a check for the difference. When plaintiff discovered he had been charged for more than the actual price of the coins, he sued Gobrecht as well as

---

[1] Defendant Wilson is not a party to this appeal.

Wilson for conspiring to defraud him.

1. Georgia courts will exercise personal jurisdiction over a non-resident defendant only if (a) the exercise of jurisdiction comports with due process *and* (b) the non-resident defendant has committed, in person or through an agent, one of the acts set forth in OCGA § 9-10-91. See *Gust v. Flint*, 257 Ga. 129 (356 SE2d 513) (1987). The unrefuted affidavits of the non-resident defendants establish that they themselves have not committed any of the acts listed in OCGA § 9-10-91. See id.; cf. also *Burt v. Energy Svc. Inv. Corp.*, 207 Ga. App. 210 (427 SE2d 576) (1993) (mere phone and mail contact is insufficient to satisfy Georgia Long Arm Statute). But the Long Arm Statute provides that the acts may be committed "through an agent," and co-conspirators act as agents of each other when they commit acts in furtherance of the conspiracy. See *American Thread Co. v. Rochester*, 82 Ga. App. 873, 884-885 (62 SE2d 602) (1950). Accordingly, we agree with the many courts which have held that the in-state acts of a resident co-conspirator may be imputed to a non-resident co-conspirator to satisfy jurisdictional requirements under some circumstances;[2] and we further conclude that those circumstances are present in this case.

(a) *Independent Satisfaction of Due Process Requirements*

This Court has rejected a "conspiracy theory" of jurisdiction where the plaintiff tried to rely on imputed acts to bypass the requirements of due process. See *Coopers & Lybrand v. Cocklereece*, 157 Ga. App. 240 (3) (276 SE2d 845) (1981).[3] Due process requires, of course, that the non-resident defendant have taken action purposefully directed toward the forum state, such that he reasonably should have anticipated being haled into court there. See *World-Wide Volkswagen Corp. v. Woodson*, 444 U. S. 286, 297 (100 SC 559, 62 LE2d 490) (1980). In *Cocklereese*, the defendant accounting firm had allegedly performed a fraudulent audit as part of a general conspiracy to defraud potential investors. We rejected the exercise of jurisdiction based on the in-state actions of co-conspirators in that case, since there was no evidence that the non-resident defendants knew or should have known the audit would be used in Georgia; and without that knowledge, there was no purposefully sought activity with Geor-

---

[2] See, e.g., *Textor v. Bd. of Regents &c.*, 711 F2d 1387, 1392-1393 (7th Cir. 1983); *Allstate Life Ins. Co. v. Linter Group Ltd.*, 782 FSupp. 215, 220-221 (S. D. N. Y. 1992); *Gudaitis v. Adomonis*, 643 FSupp. 383, 385 (E. D. N. Y. 1986); *Cawley v. Bloch*, 544 FSupp. 133, 134-135 (D. Md. 1982); *Vermont Castings v. Evans Prods. Co.*, 510 FSupp. 940, 943-945 (D. Vt. 1981); *Gemini Enterprises v. WFMY Television Corp.*, 470 FSupp. 559, 564-565 (M. D. N. C. 1979); *Mandelkorn v. Patrick*, 359 FSupp. 692, 694-697 (D. D. C. 1973); *Istituto Bancario Italiano v. Hunter Engineering Co.*, 449 A2d 210, 222-225 (Del. 1982); *Wilcox v. Stout*, 637 S2d 335, 337 (Fla. App. 1994); *Murphree v. Baykowski*, 615 SW2d 463, 466 (Mo. App. 1981).

[3] See also *Allen v. Columbia Financial Mgmt.*, 377 SE2d 352, 357 (S. C. App. 1988).

gia and no reasonable anticipation of being haled into court here. 157 Ga. App. at 246-247.

The situation is different, however, when the alleged conspiracy is targeted at one or more Georgia residents specifically. See *National Egg Co. v. Bank Leumi le-Israel, B. M.*, 514 FSupp. 1125 (N. D. Ga. 1981). When the purpose of a conspiracy is to commit an intentional tort against a Georgian, all of the co-conspirators are purposefully directing their activities toward Georgia and should reasonably anticipate being haled into court here. Id. at 1127-1128.[4] In this case, as in *National Egg*, the alleged conspiracy targeted a Georgia resident specifically. Thus, the non-resident conspirators purposefully directed their activities toward Georgia, and could reasonably expect to be haled into court here. Accordingly, the imputation to them of the in-state acts of their co-conspirator to satisfy the requirements of the Georgia Long Arm Statute is not precluded by due process concerns.[5]

(b) *More than Mere Conclusory Allegations of Conspiracy*

We emphasize that plaintiff in this case has provided more than mere conclusory allegations of the nonresidents' participation in a conspiracy with a resident. Cf. *Cocklereece*, 157 Ga. App. at 245-246 (suggesting that controverted allegations raising "specter of a conspiracy" may not be enough). The record includes copies of the invoices sent by Gobrecht to plaintiff; plaintiff's testimony that Gobrecht told him the coins were priced at $15,000 for each set, even though they were actually priced at $8,519 for the first set and $8,529 for the second; and Rudo's admission to plaintiff's secretary that he did this at Wilson's request. Although some courts have not required this kind of evidentiary showing, the majority have. See *Istituto Bancario Italiano v. Hunter Engineering Co.*, 449 A2d 210, 223-225, for a summary of what various courts have required. We agree with those courts requiring more than mere allegations of a conspiracy (unless the allegations are unrefuted), lest a defendant over whom the exercise of jurisdiction would be unfair be forced to defend the conspiracy charge on the merits in order to belatedly establish the court's lack of jurisdiction over him.[6]

---

[4] See also *Istituto Bancario Italiano*, 449 A2d at 225 (in order to rely on "conspiracy theory" of jurisdiction, plaintiff must show, among other things, that non-resident defendant knew or had reason to know that his acts or those of his co-conspirators would have effect in forum state).

[5] *National Egg* was decided pre-*Gust*, at a time when Georgia courts were interpreting the Georgia Long Arm Statute to extend to the limits of due process. Thus, once the court in *National Egg* determined that the requirements of due process were met, it did not need to decide whether to impute the in-state acts of the co-conspirator to meet the requirements of the statute. See 514 FSupp. at 1128.

[6] See, e.g., *McLaughlin v. McPhail*, 707 F2d 800, 807 (4th Cir. 1983) (requiring threshold showing of facts tending to prove conspiracy existed and non-resident defendant partici-

2. Gobrecht further argues that even if we accept the possibility of personal jurisdiction based on a "conspiracy theory," plaintiff here cannot show reasonable reliance — and thus cannot show a conspiracy to defraud — because plaintiff had the opportunity to have the coins evaluated and did not do so. This argument would be valid if the alleged fraud was simply that plaintiff paid more for the coins than they were worth. As a general matter, a buyer cannot reasonably rely on the seller's representation regarding what the goods are worth. See *Foremost Ins. Co. v. Southeast Recovery*, 175 Ga. App. 794 (3) (334 SE2d 375) (1985). But that is not what happened here. Rather, the seller misrepresented the set price he had placed on the goods; and while it may not be reasonable to rely on the seller's statement of value, a jury could certainly find it reasonable to rely on the seller's invoice and statements regarding price in this context.

*Judgment affirmed. Andrews and Smith, JJ., concur.*

DECIDED JUNE 14, 1996.

*Kirwan, Parks, Chesin & Remar, Robert B. Remar, Georgia K. Lord*, for appellants.

*Brown & Brown, George T. Brown, Jr.*, for appellee.

pated in it); *Gemini Enterprises,* 470 FSupp. at 565 (where allegations of complaint are not refuted with evidence, mere allegations are sufficient, but once defendant presents evidence negating essential jurisdictional element, plaintiff must counter with evidence sufficient to create factual dispute); *Istituto Bancario Italiano,* 449 A2d at 225 (factual showing required).