**FIRST DIVISION**
**BARNES, P. J.,**
**MARKLE and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 4, 2026**

# In the Court of Appeals of Georgia

A26A0402. FENSTER et al. v. INTERNATIONAL VENTURES, INC.

BARNES, Presiding Judge.

International Ventures ("Ventures") filed suit against Waldon and Danielle Fenster and Danielle's parents, Christopher and Laura Ritter, alleging that they defrauded it of more than $1 million. Danielle and the Ritters ("defendants") filed motions to dismiss, arguing in pertinent part that the trial court lacked personal jurisdiction. The trial court denied the motions, and we granted defendants' application for interlocutory review. Defendants argue that the grant was in error because uncontroverted evidence showed that they were not subject to the trial court's jurisdiction. We agree and reverse.

On a motion to dismiss for lack of personal jurisdiction, the defendant bears the onus of proving lack of personal jurisdiction. Further, any disputes of fact in the written submissions supporting and opposing the motion to dismiss are resolved in favor of the party asserting the existence of personal jurisdiction. Finally, because [such a] motion [is] decided on the basis of written submissions, the appellate standard of review is non-deferential.

*Genesis Research Institute v. Roxbury Press*, 247 Ga. App. 744, 744 (542 SE2d 637) (2000) (citation modified).

So viewed, the complaint alleges that during 2023 and into 2024, Ventures loaned Waldon, through his company Next Generation Legacy Fund, LLC ("Next Gen"), approximately $1.6 million. To obtain the loan, Ventures claims, Waldon provided falsified financial information and represented that Next Gen's business was providing financing to small companies throughout the country. To create this false impression, Waldon relied on a sophisticated network of shell companies, the fraudulent activities of which Danielle "corroborated . . . by [her] participation[.]" According to the complaint, the defendants were "aware" that "representations [Waldon] was making regarding Next Gen's business were false" and "knowingly" received stolen funds, with Danielle also "conspir[ing]" with Waldon in the operation

of the shell companies. The complaint does not allege more specific activities by any of the three defendants in furtherance of the alleged conspiracy to defraud investors, however. The complaint asserts that instead of providing the funding to those businesses, Waldon and the defendants knowingly used Ventures's money for their own purposes. Eventually, Next Gen repaid Ventures $400,000, but Ventures, which has its principal place of business in Fulton County, lost more than $1.2 million. The complaint set forth counts for civil theft, RICO, and civil conspiracy, but was not verified.

In response to the complaint, the defendants filed answers asserting that the complaint failed to state a claim and that the trial court lacked personal jurisdiction. Waldon did not respond to the complaint, and the trial court entered a default judgment against him.

Danielle and the Ritters filed separate motions to dismiss under OCGA § 9-11-12 (b) (2), arguing that the court lacked personal jurisdiction over them. Each motion attached an affidavit avowing that each of the three defendants lived in Illinois and had not been to Georgia in the past decade. Danielle averred that she had no property in Georgia, had never transacted business with Ventures or its representatives, and had

3

"never communicated by email, telephone mail or otherwise with" them. The Ritters also attested that they had not transacted business in Georgia, had no contacts there, and had not derived substantial revenue from the state.

After a June 2025 hearing, a transcript of which does not appear in the record, the trial court denied the motions to dismiss, finding that it had jurisdiction over these defendants. The court's order focused on Waldon's default judgment, finding that he had admitted jurisdiction and that "to the extent that [Waldon] committed tortious acts that subject him to jurisdiction under Georgia's long arm statute, those acts are imputed to his alleged co-conspirators for the purposes of personal jurisdiction." The court then certified its order for immediate review, and this interlocutory appeal followed.

Defendants now argue that to invoke jurisdiction, a plaintiff must set forth more than mere allegations of a conspiracy and that Ventures' allegations were insufficient to establish jurisdiction over them. Defendants further contend that the trial court did not appropriately consider the affidavits they submitted, which required that Ventures then rebut the evidence, and that Waldon's admission of jurisdiction by default was not binding on them.

Because defendants sought dismissal for lack of personal jurisdiction, they bore the burden of proof. *Intercontinental Servs. of Delaware, LLC v. Kent*, 343 Ga. App. 567, 568 (807 SE2d 485) (2017). Nonetheless, to the extent that the defendants' affidavits controverted the allegations of the complaint, Ventures could not rely on mere allegations, but was required to submit supporting affidavits or documentary evidence. *Scovill Fasteners v. Sure-Snap Corp.*, 207 Ga. App. 539, 539 (428 SE2d 435) (1993).

Regarding the parameters of personal jurisdiction, our "courts will exercise long arm jurisdiction over nonresident defendants when (A) the nonresident has committed, in person or through an agent, one of the acts set forth in the Georgia Long Arm Statute, OCGA § 9-10-91;[1] and (B) the exercise of jurisdiction comports with due process." *Hyperdynamics Corp. v. Southridge Capital Mgmt., LLC*, 305 Ga. App. 283, 293 (IV) (699 SE2d 456) (2010) (physical precedent only). "The Georgia

---

[1] OCGA § 9-10-91 provides in pertinent part that: "[a] court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts, . . . enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she: . . . (2) Commits a tortious act or omission within this state . . .; [or], (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]"

long-arm statute confers personal jurisdiction over nonresidents to the maximum extent permitted by due process. Due process requires that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." *Home Depot Supply v. Hunter Mgmt., LLC*, 289 Ga. App. 286, 288 (656 SE2d 898) (2008) (punctuation and footnote omitted). Thus, to determine whether a nonresident defendant transacts business in Georgia such that they are subject to personal jurisdiction, we employ a three-part analysis:

> Jurisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, *and* (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

*Intercontinental Servs.*, 343 Ga. App. at 571 (1) (citation modified).

Within this framework, this Court has expressly adopted the theory of conspiracy jurisdiction, which is "based upon the notion that the acts of one conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy." *Hyperdynamics*, 305 Ga. App. at 293-294 (IV). "Likewise, under the theory of conspiracy jurisdiction, the in-state acts of a resident co-conspirator may be

6

imputed to a nonresident co-conspirator so as to satisfy the specific contact requirements of the Georgia Long Arm Statute." Id. (punctuation omitted). Nonetheless, as defendants point out, to invoke conspiracy jurisdiction, a plaintiff must provide "more than mere conclusory allegations of the nonresidents' participation in a conspiracy with a resident." *Rudo v. Stubbs*, 221 Ga. App. 702, 704 (1) (b) (472 SE2d 515) (1996). This rule exists because it would "be unfair to be forced to defend [a] conspiracy charge on the merits in order to belatedly establish the court's lack of jurisdiction[.]" Id.; see *Coopers & Lybrand v. Cocklereece*, 157 Ga. App. 240, 245-246 (3) (276 SE2d 845) (1981) (rejecting exercise of jurisdiction based on in-state actions of co-conspirators because there was no purposefully sought activity with Georgia and no reasonable anticipation of being brought to court here).

The unverified complaint before us alleges that Waldon fraudulently represented Next Gen's business to Ventures and that the defendants were aware of these misrepresentations. As the trial court found, the complaint further asserts that by using a sophisticated network of shell companies and falsified financial records, Waldon, with the assistance of the defendants, created the illusion of a successful investment business with the purpose of defrauding investors like Ventures. The

complaint also alleges after stealing the money, each of the defendants used fraudulent proceeds from the Next Gen account to pay for their own travel and luxury goods. A Chase debit card statement in Waldon's name shows, for example, that he spent more than $100,000 at an Illinois casino.

The trial court's reliance on Waldon's default as a jurisdictional basis was misplaced, however. As we held in *Delpiano v. JP Morgan Chase Bank*, 345 Ga. App. 151, 154 (812 SE2d 506) (2018), an alleged co-conspirator's admissions regarding default are not binding on the other defendants because such an admission "does not bind a co-defendant who appears and contests the litigation." Id. In any event, this complaint does not contain the specifics necessary to impute Waldon's activities to any of the remaining three defendants. "Due process requires, of course, that the non-resident defendant have taken action purposefully directed toward the forum state, such that he reasonably should have anticipated being haled into court there." *Rudo*, 221 Ga. App. at 703 (1) (a) (citation omitted).

Ventures's complaint was unverified, and it submitted no evidence to rebut the defendants' submissions showing an absence of Georgia contacts. Compare *Rudo*, 221 Ga. App. at 703 (1) ("[w]e emphasize that plaintiff in this case has provided more than

8

mere conclusory allegations of the non-residents' participation in a conspiracy *with a resident*") (emphasis supplied). As to Danielle, the complaint alleges that she assisted Waldon in running some of the shell companies, but gives no specific examples of such activities, whereas Danielle's own affidavit denies any contact with Ventures or its representatives. As to the Ritters, the complaint likewise claims that the Ritters were aware of Waldon's fraudulent misrepresentations and received money or property from him and that they paid for the house in which Waldon and Danielle lived. But the complaint contains no specifics regarding the Ritters' involvement in the scheme and is not supported by documentary evidence which would authorize Waldon's in-state acts to be imputed to any of the remaining defendants. See generally *Rudo*, 221 Ga. App. at 704 (1) (b); *Cascade Aircraft Mgmt., LLC v. Velazco*, 374 Ga. App. 397 (913 SE2d 4) (2025) (finding insufficient contacts when defendant company did not transact any business in Georgia, but simply mailed invoices to Georgia residents and communicated electronically with them regarding services rendered out of state); compare *ATCO Sign & Lighting Co., LLC v. Stamm Mfg., Inc.*, 298 Ga. App. 528, 535 (1) (680 SE2d 571) (2009) (upholding long-arm

jurisdiction when company intentionally sought business in Georgia and company's agent engaged in various acts in Georgia relating to plaintiff's claim).

On this record, then, the trial court erred when it denied the three remaining defendants' motions to dismiss the complaint for lack of personal jurisdiction.

*Judgment reversed. Markle and Hodges, JJ., concur.*