42458. FIRST UNITED BANK OF MISSISSIPPI v. FIRST NATIONAL BANK OF ATLANTA.
(340 SE2d 597)

SMITH, Justice.

This case came to us by way of certiorari from the Court of Appeals, and the facts of the case may be found in *First United Bank of Mississippi v. First Nat. Bank of Atlanta,* 175 Ga. App. 10 (332 SE2d 309) (1985). We granted certiorari in this case to answer the following question: "Whether the collection by an out-of-state bank, through normal banking channels, of a check drawn on a Georgia bank constitutes the transaction of business in Georgia so as to subject the out-of-state bank to the jurisdiction of the Georgia courts in a suit alleging that the check was paid on an improper endorsement?"

The Court of Appeals found that the reasoning in *J. C. Penney Co. v. Malouf Co.,* 230 Ga. 140, 143 (196 SE2d 145) (1973), and *Patron Aviation, Inc. v. Teledyne Indus., Inc.,* 154 Ga. App. 13, 14 (267 SE2d 274) (1980), was applicable to the facts of this case, but we do not, and we reverse.[1]

---

[1] The cases we found from other jurisdictions that faced similar issues found that jurisdiction was lacking. "[I]n view of the enormous volume of interstate check processing which every bank performs on a daily basis, it would be unreasonable to charge each bank with the knowledge that it may at any time be called to answer in the courts of any of the fifty states from which a check cashed by one of its customers originated . . . *International Shoe* and *World-Wide Volkswagen* would be offended by basing jurisdiction over a non-resident bank upon the bank's mere acceptance of a check which indicates on its face its origin in the forum state." *Froning & Deppe, Inc. v. Continental Illinois, Etc.,* 695 F2d 289, 291 (7th Cir.1982).

Both *J. C. Penney*, supra, and *Patron*, supra, involved *manufacturers* that *manufactured* and *shipped merchandise* covered by *indemnity/warranty agreements into Georgia for resale to Georgia consumers*. One can readily find that based on their conduct, they "purposefully directed" their activities at residents of Georgia.

The stream of commerce rationale that was first introduced in *Gray v. American Radiator &c. Corp.*, 22 Ill2d 432 (176 NE2d 761) (1961), has been cited with approval most recently by the United States Supreme Court in *Burger King Corp. v. Rudzewicz*, __ U. S. __ (105 SC 2174, 2182, __ LE2d __) (1985), where the court citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U. S. 286, 297 (100 SC 559, 567-568, 62 LE2d 490) (1980), stated that " '[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that *delivers its products* into the stream of commerce with the *expectation that they will be purchased by consumers in the forum State*' and those *products subsequently injure forum consumers*." (Emphasis supplied.) But it is stretching the concept beyond its rational meaning to apply it to an out-of-state bank that engages in routine and mechanical bank collection procedures.

To allow the Court of Appeals decision to stand is to "appoint the [check] agent for service of process[,]" *World-Wide Volkswagen Corp.*, supra, 444 U. S. at 296, and to ignore the " 'purposeful availment' requirement [that] ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, [cit.]" *Burger King Corp.*, supra, 105 SC at 2183.

In *Davis Metals v. Allen*, 230 Ga. 623, 625 (198 SE2d 285) (1973), this court announced the three-prong test we use in determining whether or not jurisdiction may be exerted over a nonresident pursuant to OCGA § 9-10-91 (1). Jurisdiction "exists on the basis of transacting business in this state if [1] the nonresident defendant has purposefully done some act or consummated some transaction in this state, [2] if the cause of action arises from or is connected with such act or transaction, and [3] if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice." We have consistently held that our Long-Arm Statute confers jurisdiction over nonresidents to the maximum extent permitted by due process. *Coe & Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58 (195 SE2d 399) (1973).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which

---

See also *Sears Bank &c. Co. v. Luckman*, 18 Ill. Dec. 520 (377 NE2d 1156) (1978); *Bank of Gering v. Schoenlaub*, (540 SW2d 31) (1976); and *Jack O'Donnell Chevrolet v. Shankles*, 276 FSupp. 998 (1967).

he has established no meaningful 'contacts, ties, or relations.' [Cit.] By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' [cit.], the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.' [Cit.]

"Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, [cit.], and the litigation results from alleged injuries that 'arise out of or relate to' those activities. [Cit.]" *Burger King Corp.*, supra, 105 SC at 2181-82.

The Court of Appeals found that the appellant "must be presumed to have acted with knowledge that payment would ultimately be made in Georgia, this being the location of the drawee bank." But this "presumed knowledge" or foreseeability is not that which is critical to a due process analysis. That foreseeability "is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, supra, 444 U. S. at 297.

We now begin to look at the appellant's connection with Georgia and the appellant's conduct. The appellant is a corporation organized and incorporated under the laws of Mississippi. It is not organized or incorporated under the laws of Georgia and it is not registered or licensed to do business in Georgia. In an affidavit signed by Billy F. Wooten, Sr., Vice President and Cashier of the appellant, he states that the appellant: "(a) does not regularly do business in Georgia; (b) solicits no business in Georgia; (c) engages in no persistent conduct in Georgia; and (d) does not derive substantial revenue either from goods used or consumed in Georgia or from services rendered in Georgia." Further he states that the appellant "does not own, use or possess any real property in the State of Georgia."

In September 1983, a customer of the appellant deposited a check drawn on a Georgia bank into his account with the appellant. The appellant paid and forwarded the check for collection to the Mississippi Bank in Jackson, Mississippi. All of the appellant's conduct occurred in Meridian, Mississippi, and it was the routine, mechanical conduct of a bank that accepts for deposit a check drawn on an out-of-state bank.

The check which was drawn on a Georgia bank, by necessity, had to return to the Georgia bank after its circuitous odyssey that passed through the appellant. Although the appellant may have known that the check would return to Georgia it had absolutely no control over the final destination of the check. There was no method by which the

appellant could have prevented the check from returning to its predetermined destination after it left Georgia, short of refusing to accept the check initially. We do not find that the appellant's act of forwarding the check for collection through normal banking channels in Meridian, Mississippi, amounted to it "purposefully direct[ing its] activities at residents of [Georgia]." *Burger King Corp.*, supra, 105 SC at 2182.[2]

Based on the facts as they appear before us, we find that the appellant has not "purposefully done some act or consummated some transaction in" Georgia, *Davis Metals*, supra at 625, that would allow the courts of Georgia to exert jurisdiction over the appellant pursuant to OCGA § 9-10-91 (1).

*Judgment reversed. All the Justices concur.*

DECIDED MARCH 11, 1986.

*Johnson & Montgomery, Harmon W. Caldwell, Jr., Harry W. MacDougald,* for appellant.

*W. Christopher Bracken III, Herbert D. Shellhouse, William G. McDaniel,* for appellee.

---

[2] The appellee asserts that "[t]o argue that this action [placing the check into the normal banking channels for collection] was not purposeful requires the [appellant] to take the position that somehow they were forced or coerced against their will to go into the banking business or to cash checks drawn on out of state banks."

This ignores the realities of banking in America. "The tremendous number of checks handled by banks and the country-wide nature of the bank collecting process require uniformity in the law of bank collections. Individual Federal Reserve banks process as many as 1,000,000 items a day; large metropolitan banks average 300,000 a day; banks with less than $5,000,000 on deposit handle from 1,000 to 2,000 daily . . ." UCC § 4-101, official comment. The magnitude of problems that could arise if out-of-state banks changed their "primary conduct" by refusing checks drawn on Georgia banks, rather than being faced with the threat of being called to Georgia is incomprehensible.