## A03A0519. STUART v. PEYKAN, INC.
(581 SE2d 609)

BLACKBURN, Presiding Judge.

Frederick A. Stuart appeals the trial court's grant of summary judgment to Peykan, Inc. and the denial of his own motion for summary judgment, arguing, among other things, that the trial court lacked personal jurisdiction over him. We agree that the trial court lacked jurisdiction and reverse.

As the trial court correctly observed in its order, a motion for summary judgment is an improper vehicle for raising the issue of

---

lack of personal jurisdiction. A motion to dismiss for lack of personal jurisdiction is a motion in abatement and not a motion in bar and cannot be disposed of as a motion for summary judgment. *Behar v. Aero Med Intl.*[1] The trial court did, however, consider the substance of Stuart's contention regarding personal jurisdiction and effectively converted his motion into one to dismiss, and we shall so regard it.

> A defendant who files a motion to dismiss for lack of personal jurisdiction has the burden of proving lack of jurisdiction. If the motion is decided on the basis of written submissions alone, as was the motion in this case, disputes of fact found in the affidavits are resolved in favor of plaintiff. Further, if a motion is decided on the basis of the written submissions, the reviewing court is in an equal position with the trial court to determine the facts and therefore examines the facts under a non-deferential standard.

(Citations and punctuation omitted.) *Habersham Metal Products Co. v. Huntsville Fastener &c.*[2]

Viewing the facts in the light most favorable to the exercise of personal jurisdiction, the record shows that Andrew H. Stuart entered into negotiations with Jamshid Ahmadipour, president of Peykan, Inc. ("Peykan") for the purchase by Stuart Enterprises International, Inc. ("Stuart Enterprises"), Andrew Stuart's closely held corporation, of Munchie's Italian Restaurant ("Munchie's"), a business in Athens, Georgia, owned by Peykan. During negotiation of the terms of the sale of Munchie's, Andrew Stuart often consulted his father, appellant Frederick Stuart, about the terms of the purchase agreement and acted on his father's advice in seeking the inclusion or omission of contractual terms. At the time of the negotiations, Frederick Stuart was a resident of Illinois and never traveled to Georgia for any purpose related to the sale of Munchie's; his communications with his son during the course of the negotiations were by telephone. At no time did Frederick Stuart meet or speak with Ahmadipour, or any representatives of Ahmadipour or Peykan, prior to closing of the sale.

The purchase agreement contemplated an arrangement whereby Peykan would take a promissory note from Stuart Enterprises for a portion of the purchase price. Andrew Stuart called his father in Illinois and advised him that, as a condition of the sale, Peykan wanted

[1] *Behar v. Aero Med Intl.*, 185 Ga. App. 845 (1) (366 SE2d 223) (1988).
[2] *Habersham Metal Products Co. v. Huntsville Fastener &c.*, 216 Ga. App. 646 (455 SE2d 356) (1995).

Frederick Stuart to personally guaranty the promissory note. Frederick Stuart agreed to do so.

After Andrew Stuart and Ahmadipour came to an agreement on the sale of Munchie's, Frederick Stuart, on his son's behalf and in consultation with his son and Peykan's counsel, drafted a memorandum of understanding concerning the terms of the sale. Under that agreement, Stuart Enterprises and Andrew Stuart agreed to purchase Munchie's from Peykan by tendering a portion of the purchase price in cash and a promissory note for the balance. The memorandum provided that the promissory note would be personally guaranteed by Frederick Stuart, and that Peykan would be furnished a financial net worth statement and a credit report for Frederick Stuart. Frederick Stuart, under the terms of the purchase agreement, had no direct or indirect ownership interest in either Munchie's or Stuart Enterprises. The sale was closed between Peykan, Ahmadipour, Andrew Stuart, and Stuart Enterprises on August 15, 1997.

Business disputes arose between Andrew Stuart and Ahmadipour which led Stuart Enterprises to stop payment on the promissory note. Andrew Stuart and Stuart Enterprises sued Peykan and Ahmadipour for breach of contract; Peykan and Ahmadipour counterclaimed for the balance of the note. Peykan prevailed on the counterclaim, and, when Andrew Stuart and Stuart Enterprises were unable to pay the balance owed under the note, Peykan instituted suit against Frederick Stuart as the guarantor of the note.

1. In his first enumeration of error, Frederick Stuart contends that the trial court did not have personal jurisdiction over him. Georgia's long arm statute is set forth in OCGA § 9-10-91, and

> states that the courts of this State may exercise personal jurisdiction over any nonresident as if he were a resident of the State, if in person or through an agent he transacts any business within this State. Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, the defendant must have purposefully directed his activities at residents of the forum, and the litigation must result from alleged injuries that arise out of or relate to those activities. The constitutional touchstone is whether the defendant purposefully established minimum contacts in the forum State, that is, whether the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. Mere telephone or mail contact with an out-of-state defendant is insufficient to establish the purposeful activity with Georgia required by the Long Arm statute. Also, an individual's contract with an out-of-state

party alone cannot automatically establish sufficient minimum contacts. Prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing[,] must be evaluated in determining whether the defendant has purposefully established minimum contacts within the forum.

(Punctuation omitted.) *Pleats, Inc. v. OMSA, Inc.*[3] "The application of [the minimum contacts] rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla.*[4]

It is undisputed that Frederick Stuart, at all relevant times, has been a resident of Illinois and was never in the State of Georgia during the course of the negotiations between Peykan, Ahmadipour, Andrew Stuart, and Stuart Enterprises. Frederick Stuart did not initiate contact with the appellees or solicit the sale of the business; indeed, Frederick Stuart did not meet, and had no dealings with, either Peykan or Ahmadipour before the closing of the sale. Frederick Stuart had no prior financial dealings with either Peykan or Ahmadipour, and there is no evidence that he contemplated any future business dealings with those parties. Stuart did not offer to guaranty the promissory note in order to induce Peykan to sell Munchie's to his son; on the contrary, he agreed to guaranty the note only after Peykan and Ahmadipour requested his guaranty as a condition of the sale. Frederick Stuart was a gratuitous guarantor on the promissory note and did not receive any ownership interest, direct or indirect, in either Stuart Enterprises or Munchie's in return for his guaranty. In light of these facts, we conclude that Frederick Stuart did not purposefully avail himself of the privilege of doing business in Georgia, that he could not receive the benefits of the laws of Georgia through the protection of an economic interest, and that he should not, therefore, be subjected to the jurisdiction of this state.

The trial court, in holding that it had personal jurisdiction over Stuart, found the facts of this case to be similar to those in *White House, Inc. v. Winkler.*[5] The trial court cited *Winkler* as a case in which we upheld the trial court's finding that it had personal jurisdiction over the defendant because "the defendant contesting jurisdiction initiated contact with the plaintiff, engaged in bilateral negotiations for the purchase of goods, negotiated over payment terms,

---

[3] *Pleats, Inc. v. OMSA, Inc.*, 211 Ga. App. 643, 646 (3) (b) (440 SE2d 214) (1993).
[4] *Hanson v. Denckla*, 357 U. S. 235, 253 (78 SC 1228, 2 LE2d 1283) (1958).
[5] *White House, Inc. v. Winkler*, 202 Ga. App. 603 (415 SE2d 185) (1992).

'specifically the issue of a personal guaranty from defendant,' and created continuing obligations between himself and plaintiff." Citing other cases which have held that in-state negotiations can support a finding of minimum contacts, the trial court found that Frederick Stuart had sufficient minimum contacts because he was a de facto participant in the negotiations for the sale of Munchie's. It based its finding of de facto participation on Ahmadipour's testimony that Andrew Stuart would not make a decision concerning the sale agreement without consulting his father, and that Andrew Stuart required certain changes to the contract because his father insisted on them.

In *Winkler*, the defendant was an officer and shareholder of the corporation that defaulted on its obligations under a purchase order. Had the corporation's contract with the plaintiff proved profitable, the defendant would have shared in the economic benefits of the contract. The defendant took part in initiating contact with the plaintiff and engaged in bilateral negotiations with the plaintiff. Had the plaintiff, rather than the defendant, been the defaulting party, the defendant would have been entitled to invoke the benefits and protections of Georgia law. These facts led the *Winkler* court to conclude that jurisdiction was properly exercised over the defendant because of his "consistent and purposeful personal dealings with the Georgia corporation . . . which bestowed substantial benefits to [defendant] and induced substantial action by [plaintiff] to its detriment." *Winkler*, supra at 605.

In the present case, Stuart was a resident of Illinois and never entered Georgia during the purchase agreement negotiations. He was neither an officer nor a shareholder in Stuart Enterprises or Munchie's, and he received no ownership interest in either as consideration for his guaranty. He did not seek to do business in Georgia, was not a party to the contract, did not induce the appellees to enter into the contract, and became involved as a guarantor of the note only at the urging of Peykan and Ahmadipour. Even if he did advise his son on the terms of the sale agreement, all such advice was given over the telephone. "It is well settled that an out-of-state defendant will not be deemed to have engaged in purposeful business activity in this state on the basis of telephone or mail contact." *ETS Payphone v. TK Indus.*[6] If a Georgia court lacks personal jurisdiction over an out-of-state defendant who is actually a party to a contract but who limits negotiations to telephone or mail contacts, it follows that it will have no personal jurisdiction over a third party with no interest in the contract whose only contacts are by telephone or mail. Further, the benefits of any changes in the contract which Frederick Stuart

---

[6] *ETS Payphone v. TK Indus.*, 236 Ga. App. 713, 715 (1) (513 SE2d 257) (1999).

suggested would not inure to him but to Andrew Stuart and Stuart Enterprises. "Based on the facts as they appear before us, we find that the appellant has not 'purposefully done some act or consummated some transaction in' Georgia that would allow the courts of Georgia to exert jurisdiction over [him] pursuant to OCGA § 9-10-91." (Citation omitted.) *First United Bank of Mississippi v. First Nat. Bank of Atlanta.*[7]

2. In light of our decision in Division 1, the other enumerations raised by Frederick Stuart in his appeal are rendered moot, and we need not address them. *Mayacamas Corp. v. Gulfstream Aerospace Corp.*[8]

*Judgment reversed. Ellington and Phipps, JJ., concur.*

DECIDED MARCH 19, 2003 —
RECONSIDERATION DENIED APRIL 24, 2003 — 

*Stuart, Irvin, Stanford & Kessler, Gary R. Kessler,* for appellant. *J. Hue Henry,* for appellee.

---

[7] *First United Bank of Mississippi v. First Nat. Bank of Atlanta,* 255 Ga. 505, 508 (340 SE2d 597) (1986).

[8] *Mayacamas Corp. v. Gulfstream Aerospace Corp.,* 190 Ga. App. 892, 895 (2) (380 SE2d 303) (1989).