## A03A1767. FIRST NATIONAL BANK OF AMES, IOWA v. INNOVATIVE CLINICAL & CONSULTING SERVICES, LLC.
### (598 SE2d 530)

SMITH, Chief Judge.

We granted the application of First National Bank of Ames, Iowa (the bank) for an interlocutory appeal. The bank appeals from the trial court's denial of its motion to dismiss for lack of personal jurisdiction the action brought against it by Innovative Clinical & Consulting Services, LLC, d/b/a Toco Hills Urgent Care (ICCS). Because we find that the bank proved lack of jurisdiction under the Georgia Long Arm Statute, OCGA § 9-10-91, and the trial court should have granted its motion to dismiss, we reverse.

The record shows without dispute that ICCS is a medical facility in Atlanta managed in part by Health Care Network Solutions (HNS). HNS entered into two agreements to outsource some of its billing and collection operations. Under one agreement (the servicing agreement), a company called Med e Fund[1] agreed to advance funds to HNS for its receivables and to invoice and collect from third-party payors. The other agreement, between ICCS and A.C. Financial Corporation, an affiliate of Med e Fund, was a lease agreement covering certain hardware and software to be installed in ICCS's office to facilitate processing the receivables.

A.C. Financial is based in Ames, Iowa, and it was a customer of the bank. It had several accounts at the bank, and the bank had made secured loans to it. The bank was not a party to either of the agreements in issue. But as collateral for one loan to A.C. Financial, the bank took a security interest in the lease agreement between ICCS and A.C. Financial.

After A.C. Financial entered into the lease agreement with ICCS, it opened two bank accounts at the bank's branch in Ames, Iowa. According to Med e Fund's representations to ICCS, one of these accounts was supposed to be a "lockbox" account, where third-party payors would send their payments to ICCS. Med e Fund also represented to ICCS that it would advance funds against the receivables and that no funds would be withdrawn from the "lockbox" account without the express approval of ICCS after a periodic accounting. No

---

[1] Med f Financial, an affiliated company, was also involved.

advances were ever made, no accounting ever took place, and neither account opened at the bank was a "lockbox" account. Instead, A.C. Financial arranged for the bank to debit automatically one of the accounts, into which funds from the third-party payors had been deposited, for the lease payments owed under the agreements. The bank automatically debited these payments through the Automated Clearing House process. These transactions took place entirely within the State of Iowa.

The equipment leased under the agreement with A.C. Financial was installed in ICCS's office, and ICCS experienced problems with the equipment from the outset. In addition, Med e Fund did not make the lease payments. Because of these problems, when the bank sent signature cards to ICCS for the accounts, ICCS did not sign or return the cards. ICCS sought to resolve difficulties with the bank through various telephone calls and letters, to no avail.

ICCS brought suit against Med e Fund, Med f Financial Corporation, and A.C. Financial Corporation in Fulton County Superior Court. The bank was not joined in that action because negotiations with it were still ongoing. This suit against the bank was instituted when negotiations failed and the bank demanded that ICCS make lease payments.

In its complaint, ICCS claimed fraud and conversion and breach of contract. It sought an accounting, injunctive relief, and rescission of both agreements. The bank moved to dismiss on the ground that it was not subject to personal jurisdiction in Georgia because it did not transact business here, nor did it regularly do or solicit business or engage in any other persistent course of conduct here. The trial court denied the motion but granted a certificate of immediate review, and we granted this appeal.

Personal jurisdiction of state courts over nonresidents has long been the subject of case law, invoking constitutions and statutes at both the federal and state levels. The United States Supreme Court has held that "[a] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors," particularly when these actors "purposefully derive benefit from their interstate activities. [Cits.]" *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 473 (II) (A) (105 SC 2174, 85 LE2d 528) (1985). But the state's interest must be bounded by the due process clause of the U. S. Constitution.

> [T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State. . . . The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The

> application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

(Citations and punctuation omitted.) Id. at 474-475.

Georgia's Long Arm Statute, OCGA § 9-10-91, provides in pertinent part:

> A court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:
> (1) Transacts any business within this state;
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

The question we address in this case is whether the bank's conduct is covered under any of these three subsections of OCGA § 9-10-91.

1. We first address whether jurisdiction over the bank for ICCS's contract claims is established under subsection (1) of the Act.

(a) The existence of the bank accounts does not show that the bank purposefully availed itself of the privilege of doing business in Georgia. The bank must have purposely done some act in Georgia to be subject to our courts. *Stuart v. Peykan, Inc.*, 261 Ga. App. 46, 48 (1) (581 SE2d 609) (2003). The bank's contacts with Georgia must have been such that it should have reasonably anticipated that it would be haled into court here. Id. Here, the bank accounts were opened by an Iowa resident at an Iowa bank. The bank's only contacts with Georgia were the exchanged letters and telephone calls with ICCS regarding the accounts, and mail and telephone contact alone have been held to be insufficient to establish the purposeful activity necessary for personal jurisdiction. Id.

(b) The Act provides that the requisite contacts may be made by an agent, as well, and ICCS argues that A.C. Financial was the bank's agent for purposes of this lawsuit. It is clear that A.C. Financial,

although based in Iowa, "transacted business" in Georgia. It solicited ICCS's business in this state, and the contracts were signed here. But we cannot agree with ICCS that A.C. Financial was the bank's agent. In support of its motion to dismiss, the bank presented the affidavits of its president showing that the bank's relationship with A.C. Financial was nothing more than that of bank and customer and that A.C. Financial was not its agent. ICCS has not presented any evidence to rebut these sworn statements. The bank's affidavits denying an agency relationship cannot be overcome by the bare conclusory allegation made by ICCS. *Coopers & Lybrand v. Cocklereece*, 157 Ga. App. 240, 245 (2) (276 SE2d 845) (1981).

(c) ICCS maintains that jurisdiction under subsection (1) of the Act is established because it asserted a right to rescind the two contracts it entered into with other parties. But the bank was not a party to either of these contracts, and it follows that the bank's conduct is not covered under subsection (1).

(d) ICCS also argues that the bank's security interest in the lease contract constitutes the purposeful conduct required under the Act. But not one of ICCS's causes of action sounding in contract is remotely related to the security interest taken by the bank, nor has the bank foreclosed its interest, so as to become a party to the contract. For personal jurisdiction to be asserted over a nonresident, the litigation must result from alleged injuries that arose out of the nonresident's activities. *Stuart*, supra, 261 Ga. App. at 48 (1). We conclude that personal jurisdiction over the bank may not be asserted under subsection (1) of the Act.

2. The bank also contends that it cannot be subject to personal jurisdiction in Georgia under subsections (2) and (3) of the Act, which address tortious conduct. We agree. Under these subsections, a nonresident may be required to litigate in a Georgia forum if it has either committed a tortious act within this state or committed an act or omission outside this state that causes an injury in this state, but only "if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." OCGA § 9-10-91 (3).

The bank's affidavits also show that the bank "does not regularly conduct or solicit business in the State of Georgia; does not engage in any other persistent course of conduct in the State of Georgia; and does not derive substantial revenue from goods used or consumed or services rendered in the State of Georgia." Even were we to find that the bank committed a tortious act, it would be subject to personal jurisdiction only if it regularly does or solicits business here. The undisputed evidence shows that it does not.

*Nat. Egg Co. v. Bank Leumi le-Israel*, 514 FSupp. 1125 (N.D. Ga. 1981), relied upon by ICCS, is similar in some ways to this case. In *Nat. Egg Co.*, the district court applied Georgia law to find personal jurisdiction under the Long Arm Statute when a bank committed a tort to protect a security interest. But there, the record showed the bank's "intentional contact [with] three Georgia agricultural companies besides" National Egg Company, as well as the physical presence in Georgia of a bank vice-president. Id. at 1128. The district court concluded that because of these additional contacts, the Act was satisfied and the due process clause of the U. S. Constitution was not offended. Here, however, no "additional contacts" are shown by the record, the bank did not do or solicit business regularly in Georgia, and we conclude that the requirements of the Act were not satisfied.

Because the record does not show the requisite minimum contacts, we need not address ICCS's position that the bank is subject to personal jurisdiction in Georgia because of an alleged conspiracy to defraud. We note, however, that more than a mere allegation of conspiracy with a Georgia resident is required to support personal jurisdiction under the Act. Compare *Rudo v. Stubbs*, 221 Ga. App. 702, 704 (472 SE2d 515) (1996).

3. Finally, we also note that the stated policy of our courts has long been to interpret the Act so as to exercise "jurisdiction over nonresidents to the maximum extent permitted by [procedural] due process. [Cit.]" *First United Bank &c. v. First Nat. Bank &c.*, 255 Ga. 505, 506 (340 SE2d 597) (1986); *Bradlee Mgmt. Svcs. v. Cassells*, 249 Ga. 614, 617 (292 SE2d 717) (1982); *Yukon Partners, Inc. v. Lodge Keeper Group*, 258 Ga. App. 1, 4 (572 SE2d 647) (2002). Our Supreme Court attempted to interpret the Act broadly in *Coe & Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58 (195 SE2d 399) (1973), and *Clarkson Power Flow v. Thompson*, 244 Ga. 300 (260 SE2d 9) (1979). But it is apparent that since the Supreme Court's decision in *Gust v. Flint*, 257 Ga. 129 (356 SE2d 513) (1987), the decisions of our courts have consistently adopted a narrower interpretation of the Act.

In *Gust*, the Supreme Court refused to enter into a discussion of the merits of other states' "rules" governing minimum contacts, holding unequivocally that "[t]he rule that controls is our statute, which requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction. Where, as here, it is shown that no such acts were committed, there is no jurisdiction." Id. at 130. Subsequent cases have held to the standard that mail, telephone, or facsimile machine contact was insufficient to confer personal jurisdiction. See, e.g., *Stuart*, supra; *ETS Payphone v. TK Indus.*, 236 Ga. App. 713, 715 (1) (513 SE2d 257) (1999); *Phears v. Doyne*, 220 Ga. App. 550, 551 (1) (470 SE2d 236) (1996).

We agree with some critics that if indeed Georgia's policy is to exercise jurisdiction over nonresidents to the full extent permitted by due process, then given today's commercial practices, our courts' interpretations of the Act have not met its intended and declared policy. Certainly, our decisions may not provide Georgians who are damaged by nonresidents a forum in this state to the fullest extent permitted by the due process clause of the U. S. Constitution. As an intermediate appellate court for the correction of errors, however, we are bound to follow *Gust* and its progeny in finding in this case that mail and telephone contact is insufficient to satisfy the minimum contact required under the statute, even in fraud claims. We do not mean to declare that a broader interpretation of the Act would in this case provide ICCS with redress for the bank's actions or omissions. We hold only that it is clear under binding precedent that because the bank engaged in contact with ICCS only by mail and telephone and did not regularly do business in this state, redress may not be sought in a Georgia court.

*Judgment reversed. Ruffin, P. J., and Miller, J., concur.*

DECIDED MARCH 24, 2004 —
RECONSIDERATION DENIED APRIL 8, 2004 —

*Powell, Goldstein, Frazer & Murphy, William V. Custer IV, Jennifer B. Dempsey*, for appellant.
*Raiford & Dixon, Tyler C. Dixon*, for appellee.