**FIRST DIVISION
BARNES, P. J.,
BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**November 3, 2022**

# In the Court of Appeals of Georgia

A22A1027. BRANDENBURG v. CITY OF VIDALIA et al.

HODGES, Judge.

This wrongful death action arises from the murder of Christina Brooke Joiner by Tyrone Burns, Jr. at the R. J. Pope Traditional Menswear clothing store in Vidalia. Cathy Brandenburg, as Joiner's mother, as her estate's representative, and as guardian of Joiner's minor son (collectively, "Brandenburg"), sued the City of Vidalia (the "City") and the Central Florida Behavioral Health Network, Inc. ("CFBHN"), asserting that Vidalia police officers failed to properly investigate Burns' "status as a Florida violent probationer" during their encounters with Burns in the weeks leading up to the murder and that CFBHN failed to properly manage supervision of Burns' pretrial release on pending criminal charges in Florida. CFBHN moved to dismiss Brandenburg's complaint for lack of personal jurisdiction, while the City

moved for summary judgment based, in part, upon Brandenburg's failure to provide it with a sufficient ante litem notice. Following three hearings, the Superior Court of Toombs County granted both motions. Brandenburg appeals, arguing that the trial court erred in concluding that: (1) Brandenburg's ante litem notice to the City was insufficient because it did not "include the specific amount of monetary damages being sought" from the City (OCGA § 36-33-5 (e)); (2) Brandenburg's claims against the City were barred by the "public duty doctrine;" and (3) CFBHN was not subject to personal jurisdiction in Georgia. For the following reasons, we affirm.

Our standard of review for motions for summary judgment is well settled:

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We review the grant or denial of a motion for summary judgment de novo, and we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citation omitted.) *City of St. Marys v. Reed*, 346 Ga. App. 508, 508-509 (816 SE2d 471) (2018). Similarly, in appeals on motions to dismiss,

we review the grant of any motion to dismiss de novo, and a motion to dismiss should not be granted unless the allegations of the complaint

2

> disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof. We construe the pleadings in the light most favorable to the plaintiff with any doubts resolved in the plaintiff's favor.

(Citation and punctuation omitted.) *Manzanares v. City of Brookhaven*, 352 Ga. App. 293 (834 SE2d 358) (2019); see also *Intercontinental Svcs. of Delaware v. Kent*, 343 Ga. App. 567, 568 (807 SE2d 485) (2017) ("where, as here, a motion is resolved based solely upon written submissions, the reviewing court is in an equal position with the trial court to determine the facts and therefore examines the facts under a non-deferential standard, and we resolve all disputed issues of fact in favor of the party asserting the existence of personal jurisdiction") (citation and footnote omitted).

So viewed, the record reveals that Burns, a Florida resident, was arrested for two December 2016 incidents involving armed robbery and assaults against women in Florida. However, on April 18, 2018, the Circuit Court of Manatee County, Florida, adjudged Burns, who suffered from schizophrenia, mentally incompetent to stand trial for the crimes and placed Burns on "conditional release." Under the terms of the conditional release, Burns was to "enroll in mental health treatment and competency training administered by Centerstone [of Florida] or a program designated by Centerstone" and "take psychotropic medication as prescribed by his

3

attending psychiatrist." The conditional release required Burns to live with his father in Lakeland, Florida, and provided that "[a]ny change in address will be approved by [Burns'] case manager/forensic specialist [with Centerstone] and the court shall be immediately notified." The conditional release also prohibited Burns from possessing or using firearms.

CFBHN is a Florida publicly-funded non-profit corporation with its principal place of business located in Florida; as such, CFBHN is not registered to do business in Georgia, does not have a registered agent for service of process in Georgia, does not provide services in Georgia, and has no contracts with any Georgia service providers. Pursuant to a contract with the Florida Department of Children and Families, CFBHN managed the day-to-day "operational delivery of behavioral health services" of individuals on conditional release and planned, coordinated, and subcontracted "for the delivery of community mental health and substance abuse services through a network of direct service providers, facilities, and organizations under contract with CFBHN" which was intended to "affect the safety, health, and well-being of the people of the State of Florida." Accordingly, CFBHN contracted with Centerstone of Florida to manage individuals' mental health care, including Burns, in a 14-county area of central Florida. Between his April 2018 conditional

4

release and November 16, 2018, Burns only met with a Centerstone representative once.

On September 5, 2018, Burns traveled by bus to Vidalia to visit Teresa Byas, a former girlfriend with whom he shared a child. During his time in Vidalia, Vidalia police responded to three separate incidents involving Burns, including reports of criminal trespass for punching a passing motorist's vehicle, domestic violence against Byas, and terroristic threats against Byas. Although police spoke with Burns after the first report and detained him for three days, he was released and was never detained following the second and third reports. From the time he arrived in Vidalia, Burns had not taken any prescribed medication as required by his conditional release, although he had asked for assistance in changing prescriptions to no avail.[1]

---

[1] CFBHN correctly notes that Burns vacillated on the issue of whether he ever contacted Centerstone once he traveled to Georgia. In an affidavit, Burns averred that he reached out to the Centerstone representative "several times" after he arrived in Vidalia. Less than two weeks later, Burns deposed both that he did *not* "have any telephone conferences with Centerstone when [he was] in Georgia" and that he contacted a Centerstone representative to inform her that he was in Georgia. See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680) (1986) ("[W]here testimony is contradictory, if a reasonable explanation is offered for the contradiction, the testimony will not be construed against the party-witness. The burden rests upon the party giving the contradictory testimony to offer a reasonable explanation, and whether this has been done is an issue of law for the trial judge."). As further explained infra, we conclude that, regardless of Burns' contradictory statements as to whether *he* initiated contact with *Centerstone*, CFBHN did not

On November 16, 2018, Burns entered the R. J. Pope clothing store, where the victim — Joiner — worked. After looking through the store for a few moments, Burns produced a firearm, approached Joiner, and demanded money. Joiner emptied the cash register, and Burns forced her to the back of the store, where he shot her twice as she pled for her life; Burns then fled the store. Shortly thereafter, a customer discovered Joiner's body and sought help from a neighboring business. Police located and arrested Burns the following day, and he ultimately entered a guilty plea to charges of felony murder and aggravated assault.

On April 16, 2019, Brandenburg served the mayor and city council of the City with an ante litem notice detailing her claims against the City. Brandenburg asserted that, despite receiving "serious complaints" concerning Burns' conduct "on numerous occasions" prior to Joiner's murder, the City "never took any action to arrest him" and that the failure to "apprehend and incarcerate . . . Burns resulted in" Joiner's murder. The notice further stated that

> [t]he claim for the damages made on behalf of [Joiner's son] will be for an amount sufficient to compensate him for the full value of the life of his mother. Additional damages may include a claim made by [Joiner's estate] for the mental pain and suffering [she] sustained . . . prior to her

purposefully avail itself of any contact with Georgia.

6

death, funeral and other expenses resulting from her death, and attorney's fees and expenses. *The claim for these damages is not less than $10,000,000.00.* (Emphasis supplied.)

Brandenburg originally sued the City,[2] Centerstone, Burns, and Burns' father for claims related to Joiner's death.[3] During the course of the litigation, Brandenburg dismissed Centerstone with prejudice following a settlement agreement and successfully added CFBHN as a party defendant. In a motion for summary judgment, the City raised numerous arguments; relevant to the grounds in this appeal, the City argued that Brandenburg's ante litem notice was insufficient because her claim of "not less than $10,000,000.00" was "too indefinite to constitute a binding offer of settlement. . . ." While the City's motion remained pending, CFBHN filed a motion to dismiss pursuant to OCGA § 9-11-12 (b) (2) asserting that the trial court lacked personal jurisdiction over it since it is a Florida corporation, headquartered in Florida, and neither conducts business nor derives revenue from Georgia. Following three

[2] Brandenburg also initially sent ante litem notice to, and filed suit against, the Vidalia police. However, the parties later agreed to substitute the City for the Vidalia police.

[3] Although Brandenburg served both Burns and Burns' father, neither responded to her complaint. Aside from Burns sitting for a deposition and Burns' father providing an affidavit, neither have participated in the litigation in any manner.

7

separate hearings, the trial court granted judgment to the City and dismissed Brandenburg's complaint against CFBHN. This appeal followed.

1. In her first enumeration of error, Brandenburg contends that the trial court erred in granting the City's motion for summary judgment due to the insufficiency of her ante litem notice. Specifically, Brandenburg argues that her claim for an amount "not less than $10,000,000.00" substantially complies with Georgia's requirements for ante litem notices. See OCGA § 36-33-5. We disagree.

As we have recently noted,

[p]ursuant to OCGA § 36-33-5 (b), a person who seeks to assert a claim against a municipal corporation for money damages must, within six months of the event on which the claim is based, "present the claim in writing to the governing authority of the municipal corporation for adjustment, stating the time, place, and extent of the injury, as nearly as practicable, and the negligence which caused the injury." To that end, OCGA § 36-33-5 (e) provides that

[t]he description of the extent of the injury required in subsection (b) of this Code section shall include the *specific amount of monetary damages being sought from the municipal corporation*. The amount of monetary damages set forth in such claim shall constitute an offer of compromise. In the event such claim is not settled by the municipal corporation and the claimant litigates such claim, the amount of monetary damage set forth in such claim shall not be binding on the claimant.

8

(Citation and punctuation omitted; emphasis supplied.) *City of Norcross v. Johnson*, 363 Ga. App. 78, 79-80 (1) (870 SE2d 564) (2022); accord *Manzanares*, 352 Ga. App. at 295-296 (1). Regardless of whether OCGA § 36-33-5 (e) requires substantial or strict compliance,[4] "a notice does not . . . comply with [OCGA § 36-33-5 (e)]

---

[4] Brandenburg's argument that she need only demonstrate substantial compliance with the notice requirements of OCGA § 33-36-5 and that she, in fact, substantially complied with those requirements is unavailing. In *City of Norcross*, we observed that

[p]rior to 2014, OCGA § 36-33-5 (b) did not contain any explicit requirement for the specification of monetary damages. At that time, it was true that substantial compliance with OCGA § 36-33-5 was all that was required — that is, substantial compliance with OCGA § 36-33-5 (b). In 2014, however, the General Assembly amended OCGA § 36-33-5 to add subsection (e), which stated that an ante litem notice's "description of the extent of the injury required in subsection (b) . . . shall include the specific amount of monetary damages being sought from the municipal corporation." Since the enactment of OCGA § 36-33-5 (e), neither we nor our Supreme Court has resolved the question of whether strict or substantial compliance with OCGA § 36-33-5 (e) is required.

(Citations and punctuation omitted.) 363 Ga. App. at 80 (1), n. 2. Similarly, we need not address that issue here, "as it is settled *that a notice does not substantially comply with OCGA § 36-33-5 (e) unless it sets out a specific amount* that constitutes an offer that could be accepted by the municipality." (Citation and punctuation omitted; emphasis supplied.) Id.

9

unless a specific amount is given that would constitute an offer that could be accepted by the municipality." (Citation and punctuation omitted.) Id. at 296 (1); see also OCGA § 36-33-5 (e) ("The amount of monetary damages set forth in [the ante litem notice] shall constitute an offer of compromise.").

Here, Brandenburg's ante litem notice stated that claims for damages arising from Joiner's death would total "not less than $10,000,000.00." Despite Brandenburg's argument,[5] this amount "falls short of providing a 'specific amount of monetary damages' that could 'constitute an offer of compromise.'" (Citation

---

[5] Brandenburg is not rescued by her assertion that the monetary amount contained in her ante litem notice is irrelevant because the City would not have settled her claim "[g]iven the City's staunch position on its liability in this case" and would have proceeded to trial. In that circumstance, even had she made a specific monetary demand of $10,000,000, Brandenburg would not have been bound by the amount of the demand and would have been free to seek a higher sum. See OCGA § 36-33-5 (e) ("In the event such claim is not settled by the municipal corporation and the claimant litigates such claim, the amount of monetary damage set forth in such claim shall not be binding on the claimant."); see also *Tanks v. Nesmith*, 359 Ga. App. 596, 597 (859 SE2d 559) (2021) (noting argument that claim "in excess of $10,000" could "range from $10,000 to infinity"); *Davis v. City of Valdosta*, 357 Ga. App. 900, 901-902 (852 SE2d 859) (2020) (observing that "[a]n unknown number above [a given threshold] is too indefinite to constitute a binding offer of settlement") (citation and punctuation omitted). This highlights, rather than detracts from, the need for a "specific amount of monetary damages being sought from [a] municipal corporation." OCGA § 36-33-5 (e). Similarly, her argument that the ante litem notice was sufficient because the City could have simply "entered settlement for $10,000,000.00" is likewise unavailing. See *Tanks*, 359 Ga. App. at 597.

10

omitted.) *Davis v. City of Valdosta*, 357 Ga. App. 900, 901 (852 SE2d 859) (2020) (finding that notice of "damages for medical bills in the amount of $30,000 as well as general damages 'in an amount not less than $20,000.00'" was not specific and did not "constitute an offer of compromise") (citation and punctuation omitted); accord *Tanks v. Nesmith*, 359 Ga. App. 596, 598-600 (859 SE2d 559) (2021) (concluding that notice which identified claim of $75,000 plus "Grady Memorial Hospital bill in excess of $10,000" was "too indefinite to constitute a binding offer of settlement") (citation omitted); see also *Hall v. City of Blakely*, 361 Ga. App. 135, 136, 138 (863 SE2d 393) (2021) (holding that notice of "a monetary amount of no less than $350,000.00 and no more than two million dollars" was "too indefinite to constitute a binding offer of settlement").[6] To the contrary, "[t]he notice indicates that the value of the claim is some unknown number above [$10,000,000] and makes no statement with regard to the amount being sought. An unknown number above [$10,000,000] is too indefinite to constitute a binding offer of settlement." (Citation and punctuation

---

[6] Brandenburg's supposition that the phrase "not less than" is functionally different from "in excess of," a phrase which we have repeatedly rejected, is a mere exercise in semantics that does not produce a meaningful difference. See generally *Tanks*, 359 Ga. App. at 597, 599-600 (rejecting ante litem notice that claimed, in part, damages "in excess of $10,000"); *Davis*, 357 Ga. App. at 900, 901-902 (rejecting notice that included partial statement of damages "in an amount not less than $20,000.00").

11

omitted.) *Davis*, 357 Ga. App. at 901-902; compare *City of Lafayette v. Chandler*, 354 Ga. App. 259, 262 (840 SE2d 638) (2020) (concluding that demand stating "we will seek to recover $1,000,000.00 (one million dollars) in monetary damages on [the plaintiff's] behalf" was a specific amount of monetary damages that could constitute an offer of compromise and that complied with the ante litem notice requirements) (punctuation omitted). It follows that, "[b]y failing to provide a specific amount that would constitute a binding offer of settlement that could be accepted by the [City], [Brandenburg's] notice failed to strictly or substantially comply with [OCGA § 36-33-5 (e)]." *Hall*, 361 Ga. App. at 138. Therefore, we affirm the trial court's order granting the City's motion for summary judgment.[7]

2. Next, Brandenburg argues that the trial court erroneously granted CFBHN's motion to dismiss for lack of personal jurisdiction. In particular, Brandenburg

---

[7] In view of our conclusion in Division 1 that Brandenburg's claims against the City are barred because of her insufficient ante litem notice, we need not address her enumeration asserting that the trial court erred in finding that her claims against the City were precluded by the "public duty doctrine." See OCGA § 36-33-5 (a) ("No person, firm, or corporation having a claim for money damages against any municipal corporation on account of injuries to person or property shall bring any action against the municipal corporation for such injuries, without first giving notice as provided in this Code section."); see generally *City of Atlanta v. Burgos*, 361 Ga. App. 490, n. 1 (864 SE2d 670) (2021) (describing ante litem notice requirements as a "threshold issue").

contends that CFBHN was subject to personal jurisdiction under Georgia's Long Arm Statute (OCGA § 9-10-91) because: (1) Burns had contact with a Centerstone representative after he relocated to Georgia; and (2) Centerstone acted as CFBHN's agent, meaning that CFBHN: (a) transacted business in Georgia by virtue of its agency relationship with Centerstone, which received telephone calls from Burns after he moved to Georgia and monitored Burns' case after the murder; (b) "failed to treat and monitor Burns in Georgia," resulting in a tortious act committed in Georgia; and (c) committed a tortious act in Florida followed by a "persistent course of conduct" in Georgia — namely, the failure to monitor Burns — that led to injury in Georgia. Brandenburg further asserts that personal jurisdiction over CFBHN in Georgia would not violate constitutional due process. Because the record does not establish that CFBHN is subject to jurisdiction in Georgia as a matter of due process, we do not agree.

(a) *Due Process and Long Arm Personal Jurisdiction Generally*. "We have consistently held that our Long-Arm Statute confers jurisdiction over nonresidents to the maximum extent permitted by due process." (Citations omitted.) *SES Industries v. Intertrade Packaging Machine Corp.*, 236 Ga. App. 418, 420 (512 SE2d 316) (1999). "[B]efore permitting the exercise of long-arm jurisdiction, due process

requires that a defendant, if [it] is not present in the forum state, 'have certain *minimum contacts with [the forum state]* such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.''" (Citation omitted; emphasis supplied.) *Cooke v. Cooke*, 277 Ga. 731, 732-733 (1) (594 SE2d 370) (2004). To that end,

> [d]ue process requires that individuals have "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." *Burger King v. Rudzewicz*, 471 U.S. 462 (105 SCt 2174, 85 LEd2d 528) (1985). In evaluating whether a defendant could reasonably expect to be haled into court in a particular forum, courts examine [a] defendant's contacts with the state, focusing on whether (1) [the] defendant has done some act to avail himself of the law of the forum state; (2) the claim is related to those acts; and (3) the exercise of jurisdiction is reasonable, that is, it does not violate notions of fair play and substantial justice.

(Citations and punctuation omitted.) *Beasley v. Beasley*, 260 Ga. 419, 421 (396 SE2d 222) (1990). Importantly,

> [t]he two elements are used to determine whether [a] defendant has established the minimum contacts necessary for the exercise of jurisdiction. If a defendant has established minimum contacts, the court may then evaluate other factors that impact on the reasonableness of asserting jurisdiction, such as the burden on [the] defendant, the forum

14

state's interest in adjudicating the dispute, [the] plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering substantive social policies.

Id.; see also *Pratt & Whitney Canada v. Sanders*, 218 Ga. App. 1, 3 (460 SE2d 94) (1995) ("(1) The nonresident must purposefully avail [itself] of the privilege of doing some act or consummating some transaction with or in the forum[;] (2) The plaintiff must have a legal cause of action against the nonresident, which arises out of, or results from, the activity or activities of the defendant within the forum; and (3) If (and only if) the requirements of Rules 1 and 2 are established, a 'minimum contact' between the nonresident and the forum exists[.]") (citation, punctuation, and emphasis omitted).

It is true that "a single event may be a sufficient basis for the exercise of long arm jurisdiction if its effects within the forum are substantial enough even though the nonresident has never been physically present in the state." (Citation and punctuation omitted.) *ATCO Sign & Lighting Co. v. Stamm Manufacturing*, 298 Ga. App. 528, 534 (1) (680 SE2d 571) (2009). It is also true that long arm jurisdiction may be asserted "over business conducted through postal, telephonic, and Internet contacts." Id.; see also *Paxton v. Citizens Bank & Trust of W. Ga.*, 307 Ga. App. 112, 116 (1)

(704 SE2d 215) (2010) (same); compare *Stuart v. Peykan, Inc.*, 261 Ga. App. 46, 48-49 (1) (581 SE2d 609) (2003) (noting that "[m]ere telephone . . . contact with an out-of-state defendant is insufficient to establish the purposeful activity with Georgia required by the Long Arm statute" where Georgia plaintiffs contacted Illinois defendant, who did not initiate contact with Georgia, to seek execution of a guaranty as a condition of sale; instead, "the defendant must have *purposefully directed his activities* at residents of the forum" for forum state to acquire personal jurisdiction over defendant) (emphasis supplied). However, these maxims are then tempered against the controlling principle that the three elements described in *Beasley* "do not constitute a due process formula, but are helpful analytical tools which ensure that a defendant is not forced to litigate in a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts." *Beasley*, 260 Ga. at 421; see also *Paxton*, 307 Ga. App. at 116. Therefore, to establish personal jurisdiction, "it is essential in each case that there be some act by which the defendant *purposefully avails itself* of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (Emphasis supplied.) *Aero Toy Store v. Grieves*, 279 Ga. App. 515, 518 (1) (631 SE2d 734) (2006).

16

As a threshold matter, we note that each of Brandenburg's arguments concerning personal jurisdiction is predicated upon the following limited universe of facts: (1) when reviewing the record in a light most favorable to Burns, despite his contradictory testimony,[8] Burns may have telephoned a Centerstone representative on at least two occasions following his September 2018 arrival in Georgia and the November 2018 murder, in order to request assistance locating a Georgia treatment facility and obtaining a new prescription for his psychotropic medication; (2) Centerstone acted as an agent for CFBHN in supervising Burns' care, including the post-murder development of a corrective action plan to prevent future lapses in supervision; and (3) CFBHN paid Centerstone $525.75 for Burns' post-murder case management services between January 2019 and April 2020, while Burns was incarcerated in Georgia.[9] With these facts in mind, we turn to the question of whether CFBHN is subject to personal jurisdiction in Georgia.

---

[8] See fn. 1, supra; see also *Prophecy*, 256 Ga. at 30 (2).

[9] The "QI-Consumer Information" report, which reflects CFBHN's payments to Centerstone, also denotes payments between August 2017 and August 2018. The record demonstrates a gap between August 10, 2018 (shortly before Burns departed for Georgia) and January 31, 2019 (after Burns' incarceration in Georgia) during which no payments were made.

(b) *Long Arm Statute*. Georgia's Long Arm Statute "defines the scope of personal jurisdiction that Georgia courts may exercise over nonresidents . . . and requires that an out-of-state defendant *must do certain acts within the State of Georgia* before [it] can be subjected to specific personal jurisdiction." (Citation and punctuation omitted; emphasis supplied.) *Cooper Tire & Rubber Co. v. McCall*, 312 Ga. 422, 429 (1) (863 SE2d 81) (2021). The definition of "nonresident" includes "a corporation which is not organized or existing under the laws of this state and is not authorized to do or transact business in this state at the time a claim or cause of action under Code Section 9-10-91 arises." OCGA § 9-10-90; *Cooper Tire*, 312 Ga. at 429 (1). As a result,

> the Long Arm Statute applies solely to persons who were nonresidents of Georgia at the time the act or omission complained of occurred. Therefore, the statute's requirement that a cause of action arise out of activities within the state applies only to the exercise of personal jurisdiction over nonresidents.

(Citation, punctuation, and emphasis omitted.) Id.

Relevant to this case, Georgia's Long Arm statute provides that

A court of this state may exercise personal jurisdiction over any nonresident . . ., as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code

18

section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; [or]

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]

OCGA § 9-10-91. "[A] defendant who files a motion to dismiss for lack of personal jurisdiction has the burden of proving lack of jurisdiction[,]" and such a motion "must be granted if there are insufficient facts to support a reasonable inference that [the] defendant can be subjected to the jurisdiction of the court." (Citations omitted.) *Beasley*, 260 Ga. at 420. "[T]o the extent that [the] defendant's evidence controverts the allegations of the complaint, [the] plaintiff may not rely on mere allegations, but must also submit supporting affidavits or documentary evidence." Id.

(i) *OCGA § 9-10-91 (1) - Transacting Business*. Brandenburg first contends that, through its agency relationship with Centerstone, CFBHN transacted business

19

in Georgia because Centerstone may have accepted at least two telephone calls from Burns after Burns traveled to Georgia and because it monitored Burns after he was arrested for Joiner's murder. This argument is unpersuasive.

In this case, CFBHN is a Florida non-profit corporation with its principal place of business in Florida. CFBHN is not registered to do business in Georgia, has no offices or registered agent in Georgia, and does not contract with any Georgia service providers. Nor is there any indication in the record that any CFBHN representative had any contact with Georgia. In short, there is no indication in the record that CFBHN *itself* committed any act by which it "purposefully avail[ed] itself of the privilege of conducting activities within [Georgia], thus invoking the benefits and protections of its laws." *Aero Toy*, 279 Ga. App. at 518 (1); see also *Stuart*, 261 Ga. App. at 49 (1) (concluding personal jurisdiction was lacking where nonresident defendant/guarantor only executed guaranty at plaintiffs' insistence as a condition of sale and holding that defendant/guarantor "did not purposefully avail himself of the privilege of doing business in Georgia, that he could not receive the benefits of the

laws of Georgia through the protection of an economic interest, and that he should not, therefore, be subjected to the jurisdiction of this state").[10]

OCGA § 9-10-91 (1) does authorize Georgia courts to exercise personal jurisdiction over a nonresident based upon action committed "through an agent. . . ." It is not disputed that CFBHN contracted with Centerstone for the provision of mental health services in a 14-county area of central Florida. However,

> [s]o long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other. Generally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes. The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship. All the relevant facts and circumstances surrounding the operations of the parent and subsidiary must be examined to determine whether two separate and distinct corporate entities exist.

---

[10] Indeed, the facts upon which Brandenburg asserts personal jurisdiction are even less compelling than facts presented in other cases in which we have found a lack of jurisdiction. See, e.g., *Intl. Capital Realty Investment Co. v. West*, 234 Ga. App. 725, 727-728 (1) (507 SE2d 545) (1998) (finding no personal jurisdiction where only contacts in Georgia were that the defendant's agent drafted the parties' promissory note and telephoned the plaintiff in the Bahamas).

(Citation omitted.) *Drumm Corp. v. Wright*, 326 Ga. App. 41, 45 (755 SE2d 850) (2014); cf. *Kids R Kids Intl. v. Cope*, 330 Ga. App. 891, 892-893 (1) (769 SE2d 616) (2015) (in case involving separate entities, noting that the "historical test applied by courts in this state to determine whether an agency relationship exists is whether the contract gives, or the employer assumes, the right to control the time and manner of executing the work, as distinguished from the right merely to require results in conformity to the contract") (citation omitted). Here, the record establishes that Centerstone was an independent contractor of CFBHN.[11] Section I.1 of the "Subcontract Between [CFBHN] and [Centerstone]" provides that:

> In performing its obligations under this Subcontract, [Centerstone] shall at all times be acting in the capacity of an independent contractor and not as an officer, employee, or agent of [CFBHN] or the Department. Neither [Centerstone] not any of its agents, employees, subcontractors,

---

[11] Brandenburg cites no controlling authority to support the sweeping proposition that "[e]vidence of . . . post-tort contracts . . . [is] relevant to the jurisdictional analysis[.]" Instead, Brandenburg points us to different approaches taken in other jurisdictions and invites this Court to adopt a "fact-specific, case-by-case approach" to evaluate this proposition. However, we need not resolve any apparent conflict in other jurisdictions or adopt a rule to address such evidence, because we conclude that even if we accept the evidence — consistent with our obligation to review evidence in a light most favorable to the non-movant on a motion to dismiss — the record demonstrates that CFBHN did not transact business in Georgia.

22

or assignees shall represent to others that it is an agent of or has the authority to bind [CFBHN] or the Department by virtue of this Subcontract.

As a result, CFBHN "had no right to exercise control over the time, manner, and method of [Centerstone's] work." *Gateway Atlanta Apartments v. Harris*, 290 Ga. App. 772, 781 (3) (a) (660 SE2d 750) (2008); compare *Mitsubishi Motors Corp. v. Colemon*, 290 Ga. App. 86, 88 (1) (658 SE2d 843) (2008) (finding that principal was subject to Long Arm Statute, in part, because its wholly owned subsidiary had a registered agent for service of process in Georgia); *SES Industries*, 236 Ga. App. at 421 (concluding that nonresident corporation was subject to personal jurisdiction in Georgia, in part, because it initiated contact with Georgia company, participated in negotiations for manufacturing of item in Georgia, and visited Georgia manufacturing facility).[12] Therefore, there is no support for personal jurisdiction over CFBHN under subsection (1) of the Long Arm Statute.

---

[12] *American College Connection v. Berkowitz*, cited by Brandenburg, does not require a different result as the principal in that case directly solicited clients from Georgia, regardless of the nature of its relationship with its subcontractor. 332 Ga. App. 867, 872-873 (775 SE2d 226) (2015). Here, as we have held, there is no such evidence of purposeful direct contact linking CFBHN to Georgia.

(ii) *OCGA § 9-10-91 (2) - Tortious Act*. Next, "under [OCGA § 9-10-91 (2)] a Georgia court may exercise personal jurisdiction over a nonresident who commits a tortious act or omission within this State, insofar as the exercise of that personal jurisdiction comports with constitutional due process[.]" *Innovative Clinical & Consulting Svcs. v. First Nat. Bank of Ames, Iowa*, 279 Ga. 672, 674 (620 SE2d 352) (2005). The alleged tortious conduct was the failure to monitor and treat Burns in Georgia and report his relocation to the Florida court. As we have noted, the record does not demonstrate that CFBHN itself committed a tort in Georgia. Furthermore, CFBHN "had no right to exercise control over the time, manner, and method of [Centerstone's] work." *Harris*, 290 Ga. App. at 781 (3) (a). And we have also determined that CFBHN did not have sufficient minimum contacts to support jurisdiction as a matter of due process. Accordingly, CFBHN is "not subject to personal jurisdiction under OCGA § 9-10-91 (2) as the only torts alleged were committed by [Centerstone] in [its] capacity as an independent contractor."[13] Id.

(iii) *OCGA § 9-10-91 (3) - Persistent Course of Conduct*. Finally,

---

[13] See also Division 2 (b) (i), supra, concerning CFBHN's lack of contact with Georgia.

under [OCGA § 9-10-91 (3)] a Georgia court may exercise personal jurisdiction over a nonresident who commits a tortious injury in Georgia caused by an act or omission outside Georgia *only if* the tortfeasor "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state," notwithstanding that these limiting conditions may preclude a Georgia court from exercising personal jurisdiction over the nonresident to the fullest extent permitted by constitutional due process.

(Citation and footnote omitted.) *Innovative Clinical*, 279 Ga. at 674.

Once again, the record in this case indicates that CFBHN, a Florida non-profit corporation with a principal place of business in Florida, is not registered to do business in Georgia; does not have a registered agent for service of process in Georgia; does not provide services in Georgia; does not contract with any Georgia service providers; does not have an office, maintain bank accounts, or employ people in Georgia; does not solicit business in Georgia; and does not derive any income or revenue from Georgia. In Division 2 (b) (ii), we addressed Brandenburg's argument that CFBHN committed torts in Georgia because of Centerstone's failure to monitor Burns. But "[e]ven were we to find that [CFBHN] committed a tortious act, it would be subject to personal jurisdiction only if it regularly does or solicits business here.

25

The . . . evidence shows that it does not." *First Nat. Bank of Ames, Iowa, v. Innovative Clinical & Consulting Svcs*., 266 Ga. App. 842, 845 (2) (598 SE2d 530) (2004), reversed in part on other grounds by *Innovative Clinical*, 279 Ga. at 676. As no solicitation of business, "persistent course of conduct," or collection of "substantial revenue from . . . services rendered in this state" has been shown, CFBHN is not subject to personal jurisdiction in Georgia pursuant to OCGA § 9-10-91 (3).

Stated succinctly, the record demonstrates that CFBHN did not have sufficient minimum contacts with Georgia to support personal jurisdiction as a matter of due process. Even so, the record further supplies no factual basis to exercise personal jurisdiction over CFBHN pursuant to Georgia's Long Arm Statute. Accordingly, the trial court correctly granted CFBHN's motion to dismiss Brandenburg's action.

In sum, we conclude that Brandenburg's ante litem notice to the City was insufficient because it did not "include the specific amount of monetary damages being sought from the municipal corporation." OCGA § 36-33-5 (e). We further conclude that CFBHN was not subject to personal jurisdiction in Georgia under due process or the Long Arm Statute, OCGA § 9-10-91.[14] Therefore, we affirm the trial

---

[14] Counsel for CFBHN has averred, and counsel for Brandenburg has not refuted, that Brandenburg has filed a companion action against CFBHN in Florida.

court's orders granting the City's motion for summary judgment and CFBHN's motion to dismiss.

*Judgment affirmed. Barnes, P. J., and Brown, J., concur.*